UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

AKIDA BERRY,

        Plaintiff,

v.                                                                Case No. 15-cv-952-pp

STATE FARM FIRE AND CASUALTY COMPANY,

        Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S BREACH OF CONTRACT AND PROMISSORY ESTOPPEL CLAIMS (DKT. NO. 41)**

        Two weeks after the plaintiff purchased a homeowners policy from the defendant, a fire severely damaged the property he had purchased from the City of Milwaukee for $3,750. The plaintiff filed a claim for the policy limits, but failed to timely provide the defendant with all of the supporting documentation. One year to the date of the fire, the defendant denied the plaintiff's claim under the fraud/concealment provision of the policy. At the same time, the defendant extended the one-year limitations period for filing a lawsuit to February 8, 2015. The plaintiff waited until five months after the deadline had passed to file a lawsuit in Milwaukee County Circuit Court. The defendant now moves for summary judgment on the grounds that (1) the lawsuit is time barred and (2) the undisputed facts establish that the plaintiff violated the fraud/concealment provision of the policy. Because the court finds no basis in the record to toll the limitations period or estop the defendant from invoking the bar, the court will grant the defendant's motion and dismiss the plaintiff's breach of contract and promissory estoppel claims as time barred.

1

I.  **Summary Judgment Standard**

The court grants a summary judgment motion if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A party asserting that a fact cannot be disputed or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

II.  **Findings of Fact**

The plaintiff purchased the property from the City of Milwaukee for $3,750 on March 13, 2013 as an *in rem* foreclosure, and he renovated the property through his own work or various exchanges for work. Dkt. No. 1, ¶¶1-6; Dkt. No. 58 at ¶5. On December 18, 2013, the plaintiff contacted the

defendant by telephone to obtain a homeowners insurance policy. Dkt. No. 58 at ¶21. He spoke with State Farm Agent Pamela Hoeffluer who took the information over the telephone and instructed the plaintiff to take pictures of the front and back of the property and bring them to their scheduled appointment the next day. Id. Hoeffluer provided the plaintiff with an insurance quote which included $136,000 for the replacement cost of the property. Id. The defendant issued the plaintiff a residential fire and casualty insurance policy on December 23, 2013, which provided coverage for $136,000, a dwelling extension for $13,600, and personal property coverage for $102,000. Id.; Dkt. No. 1 at ¶8; Dkt. No. 46-1.

On January 6, 2014, a fire severely damaged the property and the plaintiff sought the limits of the policy. Dkt. No. 1, ¶ 9.

The City of Milwaukee issued an emergency raze order on the property because it was so severely damaged that it had partially collapsed and was unsafe. Dkt. No. 44 at ¶¶7-9. On February 11, 2014, the City granted the defendant a short window to stabilize and thaw the property. Id. The defendant paid a contractor to cover the property with tarps, board up windows, secure doorways and stabilize the property. Id. at ¶¶ 8–10. On February 13, 2014, the defendant notified the plaintiff of the plan to thaw the building, but the defendant was notified that the plaintiff had retained counsel. Id. at ¶¶11, 12. Defendant's claim file indicates that the defendant's agent left a detailed message with the plaintiff's attorney, Michael Krill, on February 13, 2014. Dkt. No. 56-2 at 42. The defendant warmed the property on February 15 and 16, inspected and extensively documented the damage, and determined there was no salvageable property. Id.

On February 17, 2014, the plaintiff's public adjuster, Dean Rossey, contacted the defendant and demanded that it pay to heat the property again, which the defendant refused to do; the defendant did avise that the plaintiff was free to enter and inspect the property. Id. at ¶¶ 13–15. The property was razed in May and June of 2014. Dkt. No. 46-10. The defendant issued the plaintiff a reservation of rights letter on April 28, 2014. Dkt. No. 44-3. At some point during the investigation, the defendant classified the plaintiff's claim using National Insurance Crime Bureau indicators and assigned the plaintiff's claim to the Special Investigative Unit. Dkt. No. 46-2 at 9-12; Dkt. No. 56-2 at 10.

The defendant's investigation lasted one year—from the notice of the fire until January 6, 2015. Dkt. No. 60 at 2. The defendant took the plaintiff's recorded statement on February 24, 2014 and Examination Under Oath ("EUO") on August 21, 2014. Dkt. No. 1 at ¶ 19; Dkt. No. 44-1 and 44-5. In addition, the defendant requested from the plaintiff (1) any photographs of the property prior to the fire; (2) an inventory of damaged or stolen personal property, including bills, receipts or other documentation; (3) closing documents from the plaintiff's purchase of the house; (4) receipts or other documentation for work completed on the house after purchase; (5) the plaintiff's phone records for January 2014; and (6) contact information for individuals the plaintiff indicated had information relevant to his claim. Dkt. No. 44-2. Despite the defendant's numerous inquiries, the plaintiff continually missed deadlines to provide requested documentation and repeatedly requested that his EUO be rescheduled. Dkt. No. 45 at ¶¶ 3–19. The plaintiff avers that he lost all of his personal property, possessions, records, receipts, photographs, tools and other personal property in the fire; it took him a long time to recreate

all of the documents and information he lost to satisfy the defendant's investigation. Dkt. No. 58 at ¶24.

The plaintiff submitted additional documents and responses to the defendant on December 2, 2014. Dkt. No. 45-16. Twenty days later, the defendant sent a letter to the plaintiff advising that it would extend the statute of limitations to February 9, 2015, id. at ¶¶ 21–22. On January 6, 2015, the defendant sent the plaintiff a letter denying his claim, reiterating the policy suit deadline of February 9, 2015, dkt. no. 44-4, and citing the concealment of fraud provision in the policy, id., dkt. no. 46-1 at 10.

The policy includes the following provision: "No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage." Dkt. No. 46-1 at 37. In response to an interrogatory requesting the basis for his argument that defendant tolled the statute of limitations, the plaintiff said that he could not bring his lawsuit until he complied with the terms of the policy, and the statute should be tolled because the defendant directed him not to enter the property immediately following the fire. Dkt. No. 46-9 at 1.

The plaintiff never requested—and the parties never engaged in—an appraisal proceeding or an arbitration proceeding related to the subject claim. Dkt. No. 45 at ¶¶23-24. The defendant extended the statute of limitations from January 6, 2015 to February 9, 2015. Id.

### III.  Conclusions of Law

The defendant moves for summary judgment on two grounds: (1) the statute of limitation and policy suit limitation bar the plaintiff's breach of contract claim; and (2) there is no genuine issue of material fact that the

5

plaintiff violated the concealment/fraud condition of the policy. Because the plaintiff's case is time barred, the court need not address the second argument.

The defendant's policy contains the following policy suit limitation:

> **Suit Against Us**. No action shall be brought unless there is compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

Dkt. No. 46-1 at 37. This policy language tracks the Wisconsin statute, which provides that an action on a fire insurance policy must be brought within one year of the loss. Wis. Stat. §631.83(1)(a).

The fire destroyed the plaintiff's property on January 6, 2014. The defendant extended the one-year limitations period to February 9, 2015. Despite the additional time, the plaintiff did not file a lawsuit in Milwaukee County Circuit Court until July 8, 2015. As a consequence, the policy and the statute bar the plaintiff's breach of contract claim.

The plaintiff first argues that Section 6 of the defendant's policy was amended by the Homeowners Policy Endorsement FE-3548, which addresses the Conditions in Section II of the policy. The Endorsement states that the "following is added to item 6, **Suit Against Us**":

> If an action for bodily injury or property damage occurring in the State of Wisconsin is brought in Wisconsin, **Suit Against Us** is replaced by the following:
>
> No action shall lie against us unless, as a condition precedent thereto, there shall have been full compliance by you of all terms of this policy.

Dkt. No. 46-1 at 10. The plaintiff asserts this endorsement deleted the one-year statute of limitations language and prevented him from filing a suit because of the mandatory condition precedent language in Section 6.

6

The problem with this argument is that Endorsement FE-3548 adds language to Section II—Conditions, which is not relevant to this lawsuit. Section II—Conditions never contained a one-year limitations period. The relevant one-year limitations period appears in Section I—Conditions, which discusses claims by the insured for property losses and first party insurance disputes. Section II, on the other hand, spells out the insured's personal liability in cases where "a claim or suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies." Dkt. No 46-1 at 38.

The policy and the statute set a one-year limitations period, and that one-year begins to run at the time of the loss or damage. Dkt. No. 46-1 at 37; Wis. Stat. §631.83(1) ("An action on a fire insurance policy must be commenced within 12 months after the inception of the loss.") The Wisconsin Court of Appeals has held that the "inception of the loss clearly and unambiguously means the date on which the loss occurs." Stelpflug v. Rural Mut. Ins. Co., 2018 WL 5307101, *3 (Ct. App. 2018). The loss here occurred on January 6, 2014. The one-year deadline expired January 6, 2015, but the defendant extended it to February 9, 2015. The plaintiff admits there was no other agreement.

The plaintiff also argues that there is a genuine issue of material fact as to whether the defendant's year-long investigation tolled the statute of limitations. The plaintiff acknowledges that Wisconsin has not adopted the automatic tolling rule articulated in the California case that he cites, Prudential-LMI Com. Ins. v. Superior Court, 798 P.2d 1230 (Cal. 1980). Nevertheless, he argues that Wisconsin has applied equitable estoppel to insurance suit limitation clauses. See Dishno v. Home Mut. Ins. Co., 256 Wis.

7

448, 451-53 (1950) ("It does not seem to require much argument to demonstrate that if, by any act or omission of the responsible officers and agents of the defendant, the plaintiff should be induced to suspend action in the premises, for a given time, such time should not be deemed a part of the twelve months to which his right of action is limited by the original contract.").

The record does not support tolling or the doctrine of equitable estoppel in this case. There is a Wisconsin statute that contemplates tolling of the limitation period. Wis. Stat. §631.83(5) provides for tolling in actions under fire insurance policies where the parties conduct an "appraisal or arbitration procedure prescribed by the insurance policy or by law or agreed to by the parties—but that did not happen here. There was no appraisal or arbitration procedure prescribed by the insurance policy or by law or agreed to by the parties. See Weiting Funeral Home of Chilton, Inc. v. Meridian Mutual Ins. Co., 177 Wis. 2d 274, 293 (Ct. App. 2004) ("an 'agreement' by the parties to engage in an appraisal procedure under Wis. Stat. §631.83(5) requires something more than a mere agreement to meet and discuss a dispute between the parties.") The plaintiff's additional proposed finding of fact #12 states, "There was never a tolling agreement between State Farm and Berry." Dkt. No. 60 at 16 (proposed additional finding admitted by defendant).

Wisconsin courts have applied the doctrine of equitable estoppel to disputes about insurance coverage, Mercado v. Mitchell, 83 Wis. 2d 17, 26-27 (1978), but the facts of those cases do not support the application of the doctrine here. The test of whether a party should be estopped from asserting the statute of limitations is whether the conduct and representations of the party against whom estoppel is sought were so unfair and misleading as to outweigh the public's interest in setting a limitation on bringing actions.

Johnson v. Johnson, 179 Wis. 2d 574, 582 (Ct. App. 1993). Proof of equitable estoppel must be clear, satisfactory and convincing and may not rest on inference or conjecture. Nugent v. Slaght, 249 Wis. 2d 220 (Ct. App. 2001).

To survive summary judgment on an equitable estoppel theory, the plaintiff must create a genuine issue of material fact with respect to the following elements: (1) the defendant engaged in particular conduct—either action or inaction or representations—prior to the expiration of the limitations period; (2) the plaintiff reasonably relied on that conduct; (3) as a result of the reliance the plaintiff did not file the lawsuit within the one-year period; (4) after the inducement for the delay ceased, the plaintiff did not unreasonably delay in bringing the lawsuit; and (5) the defendant's conduct was so unfair and misleading as to outweigh the public's interest in setting a limitation on bringing actions. Elliott v. General Cas. Co. of Wis., 2011 WL 5120370, *3 (Ct. App. 2011) (citing State ex rel. Susedik v. Knutson, 52 Wis. 2d 593, 596-97 (1971)).

The plaintiff cites Dishno, where the Wisconsin Supreme Court applied the doctrine of equitable estoppel because the defendant led the plaintiff to believe that an equitable adjustment would be made with respect to the plaintiff's claim. Dishno, 256 Wis. at 452. The defendant's agent negotiated *after* the twelve-month period had expired and induced the plaintiff to believe a lawsuit would not be necessary. Id. The court reasoned that the plaintiff's failure to file the lawsuit was the direct result of the defendant's acts and conduct in continuing the negotiations with any mention of the limitation in that respect under the policy. Id.

Nothing in this record supports a finding that the defendant engaged in action, inaction or representations prior to the expiration of the limitations

9

period that would have induced the plaintiff to believe a lawsuit would not be necessary. The parties in this case never engaged in "negotiations." See Esser v. Hawkeye-Security Ins. Co., 2018 WL 2422652, *6 (Wis. Ct. App. 2018) (acknowledging that ongoing negotiations may toll a limitation period but they must be long enough and significant enough to be considered negotiations). The plaintiff cites the December 2014 claim notes in which the defendant says "extending SOL by 30 days as recommended by Atty O'Brien has been approved … OK to notify Atty Krill that we are extending the SOL by 30 days from 01/06/15." Dkt. No. 56-2 at 6. The plaintiff also relies on the defendant's December 22, 2014, letter addressed to the plaintiff's attorney. The letter unequivocally states:

> Dear Mr. Krill:
>
> Please be advised that **State Farm agrees to extend the statute of limitations to February 9, 2015** with regard to the above-referenced claim.
>
> Mr. Berry remains under a duty to cooperate with State Farm in its investigation of his claim and to comply with the terms and conditions of his policy. Failure to comply and to provide information could result in the denial of his claim.
>
> **Please be advised that any action taken by State Farm or its authorized representatives, in investigating the cause of the loss, to determine the amount of the loss, or to attempt to adjust any claim arising out of the alleged loss shall not waive any of the terms or conditions of the policy of insurance**, nor shall such action waive any of your rights or State Farm's rights under the policy.

Dkt. No. 45-16 at 1 (emphasis added).

These documents do nothing more than extend the time for filing to February 9, 2015. The defendant denied the plaintiff's claim within one month of the plaintiff turning over his documents. Dkt. No. 44-4 at 1. The defendant

10

recognized that the plaintiff was running up against the deadline and extended the deadline. The defendant's letter denying the claim cited the actual language appearing in Section I regarding the one-year limitations period. The defendant further stated, "We previously notified you that State Farm has agreed to extend the policy suit limitation to February 9, 2015." Dkt. No. 44-4 at 1. The defendant sent the letter to the plaintiff in care of his attorney in this lawsuit (Attorney Michael Krill, 735 N. Water St. Ste 510, Milwaukee WI 53202-4104). Dkt. No. 44-4 at 1.

This case resembles Martin v. Liberty Mut. Fire Ins. Co., 97 Wis. 2d 127, 135 (1980). There, the plaintiff argued the insurer's conduct tolled or suspended the limitations period while the insurance company's conduct induced her to wait. Id. The Wisconsin Supreme Court rejected the estoppel defense and upheld the grant of summary judgment where the company had unequivocally informed the plaintiff that the claim would not be paid eleven months after the claimed loss. Id. The plaintiff had a month to file the lawsuit before the contractual bar to action would take effect, but failed to act and gave no reason for the failure. Id.

As a last-ditch effort to avoid the limitations bar, the plaintiff argues that the following creates a genuine issue of material fact:

> First, whether State Farms actions to conduct a yearlong investigation to determine whether it was paying or denying Berry's claim tolled the statute of limitations. Clearly, State Farm was acting under its contract with Berry to conduct an investigation and held Berry at bay because Berry could not sue State Farm under the terms of the Policy, until the investigation was completed. This question is further complicated by the fact that State Farm, "by agreement extended the statute of limitation by 30 days. But could State Farm do so under the factual circumstances of its investigation? Was 30 days sufficient under the circumstances? Did State Farm's conduct in engaging in a yearlong investigation estop

> State Farm from asserting the statute of limitation under these circumstances?

Dkt. No. 57 at 24.

The plaintiff does not cite policy language to support his argument that he could not sue under the terms of the policy until the defendant completed the investigation. Section I—Conditions states that no action shall be brought unless there has been compliance with the policy provisions. The next sentence states that the action must be started within one year after the date of the loss or damage. Dkt. No. 46-1 at 37. While it required compliance with the terms and conditions, Section I did not bar the plaintiff from suing before the one-year deadline (or by the February 9, 2015 extension). In addition, the plaintiff complains about the length of the investigation but admits that he continually missed deadlines to provide the requested documentation to the defendant and repeatedly requested that his EUO be rescheduled. Dkt. No. 60 at 2. After he submitted his documents on December 2, 2014, the defendant sent him a letter extending the statute of limitations to February 9, 2015. Id.

The plaintiff proposes no additional facts regarding actions taken or not taken by the defendant that would have led him to believe a lawsuit would not be necessary. He would have liked a longer extension, but the defendant didn't have to grant an extension at all. Nothing that the defendant did or did not do would have suggested to the plaintiff that the clocked stopped running at any time. Rather, the defendant reminded the plaintiff and his attorney that the clock was running and that the deadline was approaching. Even after the deadline passed, the plaintiff inexplicably waited another five months to file the lawsuit. Without any evidence to support the plaintiff's arguments, the one-year limitations period bars the plaintiff's breach of contract claim.

As a final matter, the court notes that it had bifurcated the breach of contract and the bad faith claim. In addition, the plaintiff also filed a claim for promissory estoppel. The plaintiff's claims sound in contract as they arise under the homeowners policy. Because the plaintiff does not allege a promise other than then one made in the contract, the promissory estoppel claim cannot stand under Wisconsin law. Bertha v. Remy Int'l Inc., 414 F. Supp. 2d 869, 881 (E.D. Wis. 2006) ("The existence of a contractual relationship bars a promissory estoppel claim ....").

That leaves the plaintiff's bad faith claim. Under Wisconsin law, breach of contract and the tort of bad faith are two separate claims or causes of action. Jones v. Secura Ins. Co., 249 Wis. 2d 623, 644 (2002). The court instructed the parties to file a modified Rule 26(f) plan by June 14, 2019, with respect to the bad faith claim.

## IV. Conclusion

The court **GRANTS** the defendant's motion for summary judgment as to the plaintiff's breach of contract and promissory estoppel claims. Dkt. No. 41.

Dated in Milwaukee, Wisconsin this 9th day of May, 2019.

                                      **BY THE COURT:**

                                      **HON. PAMELA PEPPER**
                                      **United States District Judge**